UNITED STATES DISTRICT COURT
                            DISTRICT OF CONNECTICUT


CHANDRA BOZELKO                   :
                                  :        PRISONER
  v.                              :        CASE NO. 3:15cv1421 (MPS)
                                  :
GARY ROBERGE                      :
_____

                 **RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Chandra Bozelko, is currently serving the probationary period of her sentence. In this habeas corpus action filed pursuant to 28 U.S.C. § 2254, the petitioner challenges her 2007 conviction based on four separate incidents involving larceny or attempted larceny, identity theft, illegal use of a credit card, and forgery.

**I.    Factual Background**

The Connecticut Appellate Court determined that the jury could have found the following facts.

> The [petitioner] was employed by Kate's Paperie, a paper products and gift store, between November 5, 2003, and January 24, 2004. Kate's Paperie accepted major credit cards, and store employees had access to the signed credit card receipts, which included the customer's name and full credit card account number.
>
> In December, 2003, Pamela Williams purchased items from Kate's Paperie in Greenwich. She paid for these items by using her American Express credit card. Shortly thereafter, Williams examined her American Express monthly statement and discovered that approximately $3000 had been charged to her card by a Greenwich boutique without her knowledge or authorization. American Express investigated the charges and determined that the charges were fraudulent. Williams' credit card was deactivated and a new card using a new account number was issued to her. Using this new card, Williams made other purchases from Kate's Paperie. In March, 2005, several purchases were charged to Williams' new American Express account without her knowledge or authorization. These

purchases were made online from Blissout, Inc., Amazon.com, Inc., Sephora USA, Inc., and The Finish Line, Inc.

On January 20, 2005, Paul Gerst, a Federal Express employee, attempted to deliver two packages to 133 Wild Rose Drive in Orange. The packages required the addressee to sign a receipt indicating that she had received them in order for Gerst to leave them. The homeowner at 133 Wild Rose Drive was not home, so Gerst did not leave the packages. As Gerst was getting back into his truck, the [petitioner] came out of a neighboring house. This house was numbered 183 Wild Rose Drive. The [petitioner] informed Gerst that the packages were misaddressed. She told him that they should have gone to her home at 183 Wild Rose Drive, not 133 Wild Rose Drive. The [petitioner] then signed for the packages using the name "S. Bosis."

Prior to January, 2006, John Hillgen lived at 133 Wild Rose Drive. On several occasions, packages that did not belong to him were delivered to his home. Each time Hillgen informed the sender that they had misaddressed the packages and then returned them to the sender.

Gerst was assigned to deliver another package to 183 Wild Rose Drive on March 17, 2005. This package was addressed to Pamela Williams. Williams did not reside at 183 Wild Rose Drive. Gerst was instructed by his supervisor to deliver the package to the town of Orange police department as part of an ongoing investigation. Robert Cole, a town of Orange police investigator, called the telephone number listed on the package and discovered that it belonged to the [petitioner].

Five days later, Gerst was assigned another parcel to be delivered to 189 Wild Rose Drive. When Gerst delivered the package to the resident of 189 Wild Rose Drive, she informed him that the package did not belong to her but, rather, belonged to 183 Wild Rose Drive, the house next door. This package was addressed to the [petitioner].

In December, 2004, Jonathan Boies and his wife, Jodie Boies, were joint users of an American Express account. On December 23 or 24, 2004, Jodie Boies used her American Express credit card at Kate's Paperie. On January 27, 2005, Randy Vines, a fraud investigator from Nieman Marcus, the parent company of Bergdorf Goodman, telephoned Jonathan Boies regarding possible fraudulent purchases, in the amount of $2252, charged to his American Express credit card and shipped to 133 Wild Rose Drive in Orange. The Boies' American Express account was used again at the end of January, 2005, to purchase approximately $43,000 worth of merchandise from Bergdorf Goodman. The customer who ordered these purchases requested that the items be mailed to Debra Boies at 133 Wild Rose Drive in Orange, and used the [petitioner's] telephone number. Jonathan Boies

2

did not have any knowledge of these purchases, did not know of any Debra Boies and did not authorize anyone to use his credit card.

The United States Postal Service and town of Orange police officers conducted a videotaped controlled delivery to the [petitioner], in which Patrick Bernardo, a United States postal inspector, purported to deliver merchandise from Bergdorf Goodman to 183 Wild Rose Drive, the address of the [petitioner]. Bernardo asked the [petitioner]: "[A]re you Debra Boies?" The [petitioner] responded that she was and proceeded to sign "Debra Boies" on four different sections of the United States postal parcel slips. The [petitioner] was then taken into custody.

*Bozelko*, 119 Conn. App. at 487–89, 987 A.2d at 1105–07.

## II. Procedural Background

Following a jury trial in October 2007, the petitioner was convicted of ten felonies and four misdemeanors based on her involvement in four separate incidents involving larceny or attempted larceny, identity theft, illegal use of a credit card, and forgery.[1] She was sentenced to a total effective term of imprisonment of ten years, execution suspended after she served five years of imprisonment, followed by four years of probation. *See Bozelko v. Warden, State Prison*, No. CV10-4003804-S, 2013 WL 4734867, at *1 (Conn. Super. Ct. Aug. 13, 2013).

On direct appeal, the petitioner argued that the trial court improperly denied her motion for mistrial, denied her motion to proceed *pro se*, and improperly instructed the jury regarding a

---

[1] The petitioner was charged in four separate files on fourteen counts. In docket number CR–05–128445, she was convicted of attempt to commit larceny in the first degree, identity theft in the first degree, attempt to commit illegal use of a credit card, and forgery in the third degree. In docket number CR–05–128811, she was convicted of larceny in the third degree, identity theft in the third degree, illegal use of a credit card, and forgery in the third degree. In docket number CR–05–129108, she was convicted of attempt to commit larceny in the fifth degree, attempt to commit illegal use of a credit card, and identity theft in the third degree. In docket number CR–05–129107, she was convicted of larceny in the fifth degree, illegal use of a credit card, and identity theft in the third degree. The petitioner was found not guilty on eight other counts. In docket number CR–01–129104, she was found not guilty of attempt to commit larceny in the fourth degree, attempt to commit illegal use of a credit card, larceny in the sixth degree, illegal use of a credit card, and identity theft in the third degree. In docket number CR–05–129102, she was found not guilty of attempt to commit larceny in the fourth degree, attempt to commit illegal use of a credit card, and identity theft in the third degree. *State v. Bozelko*, 119 Conn. App. 483, 485-87 & n.1, 987 A.2d 1102, 1105 & n.1 (2010).

unanimous verdict. She also challenged the convictions for identity theft and illegal use of a credit card as violating her right to be free from double jeopardy. The Connecticut Appellate Court affirmed the conviction and the Connecticut Supreme Court denied certification to appeal. *State v. Bozelko*, 119 Conn. App. 483, 486-87, 987 A.2d 1102, 1105, *cert. denied*, 295 Conn. 916, 990 A.2d 867 (2010). None of these issues are included in the federal petition.

On May 20, 2010, the petitioner filed a petition for writ of habeas corpus in state court on the ground that trial counsel was ineffective. Resp't's Mem. App. E at A-13 – A-20. On October 5, 2010, the petitioner filed a second state habeas action alleging ineffective assistance of sentencing counsel. *Id.* at A-21 – A-25. The cases were consolidated and counsel was appointed to represent the petitioner. In the amended petition for writ of habeas corpus, the petitioner alleged that trial counsel was ineffective in seven ways: (1) she failed to adequately cross-examine the state's witnesses; (2) she did not formulate a theory of defense or marshal defense evidence; (3) she did not conduct an adequate pretrial investigation; (4) her request to charge the jury was not tailored to the facts of the case; (5) her closing argument was inadequate regarding the existence of reasonable doubt; (6) she did not move to suppress statements made by the petitioner; and (7) she did not move to suppress any identification of the petitioner as being unnecessarily suggestive and conducive to misidentification. *Id.* at A-31. The petitioner also alleged that sentencing counsel was ineffective in four ways: (1) she failed to marshal arguments in support of mitigation of punishment; (2) failed to provide a sentencing report in support of mitigation; (3) admitted that she was not prepared for sentencing; and (4) stated that she "'never imagin[ed] that [the petitioner] would be sentenced today[.]'" *Id.* at A-33.

The state court held a hearing at which the petitioner, trial counsel, sentencing counsel,

4

and a criminal defense mitigation specialist testified. After considering the testimony and post-trial briefs, the state court denied the petition. The court determined "that the petitioner has failed to prove, by a preponderance of the evidence, any specification of ineffective assistance by [trial counsel] under either prong of the *Strickland* standard by which such claims are evaluated" and "[t]he allegations against [trial counsel] are trivial and inconsequential in light of the crushing evidence of her guilt." *Bozelko*, 2013 WL 4734867, at *5. The court also concluded that sentencing counsel not only met professional norms, "but in the court's opinion, she far exceeded them. This count of ineffective assistance remains unproven under the *Strickland* criteria." *Id.* at *7.

Although the habeas court denied certification to appeal, Resp't's Mem. App. E at A-143, the petitioner appealed the denial to the Connecticut Appellate Court. She argued that the trial court erred in determining that trial counsel was not ineffective with regard to five claims: (1) failure to file a motion to suppress the petitioner's allegedly incriminating statements to the police; (2) failure to file a motion to suppress the Federal Express driver's in-court identification; (3) failure to conduct an adequate pretrial investigation; (4) failure to adequately cross-examine the state's witnesses; and (5) failure to give an adequate summation during closing argument. The petitioner also argued that the trial court erred in determining that sentencing counsel was not ineffective during sentencing. Resp't's Mem. App. E at 9-28.

On March 24, 2015, the Connecticut Appellate Court dismissed the appeal without comment in a per curiam decision. *Bozelko v. Commissioner of Correction*, 156 Conn. App. 901, 110 A.3d 548 (2015). The petitioner sought certification from the Connecticut Supreme Court challenging the application of the *Strickland* standard. Resp't's Mem. App. H.

5

Certification was denied on May 20, 2015. *Bozelko v. Commissioner of Correction*, 317 Conn. 904, 114 A.3d 1219 (2015). The petitioner commenced this action on September 28, 2015.

## III. Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that her custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *White v. Woodall*, 572 U.S. ___, ___, 134 S. Ct. 1697, 1702 (2014). Second Circuit law that does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief. *See Renico v. Lett,* 559 U.S. 766, 778 (2010) (holding that court of appeals erred in relying on its own decision in a federal habeas action); *see also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (absent a Supreme

Court case establishing a particular right, federal court inference of right does not warrant federal habeas relief).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies clearly established federal law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also White*, 134 S. Ct. at 1702 (the unreasonable application of Supreme Court holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice")(internal quotation marks and citation omitted); *Burt v. Titlow*, 571 U.S. ___, ___, 134 S. Ct. 10, 15 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (objective unreasonableness is "a substantially higher threshold" than incorrectness).

When reviewing a habeas petition, the Court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (standard for evaluating state court rulings where constitutional claims have been considered on the merits and which affords state court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). The presumption of correctness, which applies to

"historical facts, that is, recitals of external events and the credibility of the witnesses narrating them[,]" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, the federal court's review under both subsections of section 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 180. Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. *See Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376 (2015) (federal habeas review is "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction though appeal").

## IV. Discussion

The petitioner challenges her conviction on one ground, ineffective assistance of trial and sentencing counsel. Pet, ECF No.1, ¶ 12. The petitioner generally argues that both attorneys failed to prepare in any way. More specifically, with regard to trial counsel, the petitioner contends that she filed no paperwork, did not object to the state's motions or evidence, missed opportunities to suppress evidence, and informed the jury several times during closing argument that there was "no reasonable doubt." *Id.*

Although the petitioner phrases her ground for relief in general terms, the Court considers this petition to assert those specific ineffective assistance of counsel claims presented in state court. Before filing a petition for writ of habeas corpus in federal court, the petitioner must properly exhaust her state court remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999);

28 U.S.C. § 2254(b)(1)(A). The Second Circuit requires the district court to conduct a two-part inquiry. First, a petitioner must present the factual and legal bases of his federal claim to the highest state court capable of reviewing it. Second, she must have utilized all available means to secure appellate review of her claims. *See Galdamez v. Keane*, 394 F.3d 68, 73-74 (2d Cir.), *cert. denied sub nom. Galdamez v. Fischer,* 544 U.S. 1025 (2005). As the petitioner was required to assert the same claims in state court that she presents here, the Court considers the petition to assert the same examples of ineffective assistance of counsel that were presented on appeal to the Connecticut Appellate Court, namely that trial counsel was ineffective by failing to move to suppress her statements to police and the in-court identification, conduct an adequate pretrial investigation, adequately cross-examine the state's witnesses, and give an adequate summation during closing argument, and that sentencing counsel was not prepared at the sentencing.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, the petitioner must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that the deficient performance caused prejudice to her. *Id.* at 687-88. Counsel is presumed to be competent. The petitioner bears the burden of demonstrating unconstitutional representation. *United States v. Cronic*, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial. *Strickland,* 466 U.S. at 694. The court evaluates counsel's conduct at the

9

time the decisions were made, not in hindsight, and affords "a heavy measure of deference" to counsel's decisions. *Rompilla v. Beard*, 545 U.S. 374, 381 (2005). To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice. *Strickland*, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong. When reviewing ineffective assistance of counsel claims in a section 2254 petition, a federal court "must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Woods*, 135 S. Ct. at 1376 (internal quotation marks and citation omitted).

The Court considers the last reasoned state court decision in evaluating a section 2254 petition. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Here, the last reasoned decision was issued by the Connecticut Superior Court. In that decision, the state court applied the *Strickland* standard. As the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1). Accordingly, this Court must determine whether the state court decision is a reasonable application of *Strickland*. The question this Court must answer "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "[R]eview under § 2254(d)(1) focuses on what a state court knew and did" and "measure[s]" the state-court decision against Supreme Court "precedents as of 'the time the state court rendered its decision.'" *Pinholster,* 562 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing

10

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

      A.      <u>Trial Counsel Failed to Move to Suppress Statements and In-Court Identification</u>

The petitioner first argues that trial counsel was ineffective because she failed to move to suppress the petitioner's oral statements to the police at the time of her arrest. At the habeas trial, the petitioner testified that she did not make the statements attributed to her and that she had informed trial counsel of this fact. Habeas Tr., Resp't's Mem. App. L, at 34-36. Trial counsel testified that she did not file any pretrial motions because she did not think any such motions were warranted. *Id.* at 81. Trial counsel stated that she determined that the statements had been made after the petitioner was advised of her rights and, after reviewing the police reports, concluded that the statements were knowing and voluntary. *Id.* at 107-09 ("I assessed it and decided not to do it.").

The petitioner argues that trial counsel was unaware that she had made any statements to the police. During the habeas hearing, trial counsel clarified that, at one point during the criminal trial, she misunderstood the prosecution to be referring to a written statement given by the petitioner to the police, rather than an oral statement. *Id.* at 110-12, 136-37.

The habeas court believed trial counsel's testimony and did not believe the petitioner. The habeas court reviewed the trial transcript and the evidence submitted at the habeas trial and determined that trial counsel properly determined that the motion would have no prospect of success. The habeas court noted in its decision that the petitioner had presented no evidence suggesting that a motion to suppress would have been successful. *Bozelko*, 2013 WL 4734867, at

\*2. Although she stated that she was not advised of her rights, the petitioner presented no evidence at the habeas trial to support her statement; she did not call the police officers as witnesses. The habeas court did not credit the petitioner's testimony. *Id.* at \*5. The petitioner has failed to carry her burden of rebutting the presumption of correctness accorded to the habeas court's factual determinations by clear and convincing evidence. Accordingly, she has failed to show that counsel's performance was ineffective under the first prong of the *Strickland* standard or that there was prejudice under the second prong. *See Strickland* 466 U.S. at 693 ("It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding … and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."); *see also United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999) ("Trial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance" (citation omitted)). The Court concludes that the habeas court's decision on this claim was a reasonable application of Supreme Court law.

The petitioner also contends that trial counsel was ineffective for failing to move to suppress the in-court identification of the petitioner by the FedEx courier. She argues that suppression was warranted because the courier was unable to identify the petitioner from a photo array two days after he delivered a package to her. The habeas court reviewed the trial transcript, which shows that trial counsel questioned the courier on his inability to identity the petitioner. *See* Trial Tr. Oct. 3, 2007 at 50-53, Resp't's Mem. App. K 10/3/07. During closing argument, trial counsel returned to this point, emphasizing the difference between the courier's description and the petitioner. *See* Trial Tr. Oct. 5, 2007 at 44, Resp't's Mem. App. K 10/5/07. At the habeas trial, trial counsel testified that, as the courier's description differed from the

12

petitioner with regard to hair color and height, she made a strategic decision to permit an in-court identification so the jury could see the discrepancies. *See* Habeas Tr. at 83, 130.

The habeas court noted that the petitioner presented no evidence to suggest that trial counsel's decision was not a proper exercise of trial strategy. Although the petitioner testified that she had not been told that she would be asked to stand in connection with the identification or advised to wear flat heels, the habeas court found her testimony not credible. *Bozelko*, 2013 WL 4734867, at *5. Again, based on the evidence presented, the Court concludes that the habeas court's determination on this issue was a reasonable application of Supreme Court law.

B.   Trial Counsel Failed to Conduct Adequate Pretrial Investigation

The petitioner next argues that trial counsel failed to conduct an adequate pretrial investigation. She contends that trial counsel failed to investigate an alibi defense for the January 20, 2005 delivery. The petitioner presented no evidence to support her testimony that she was elsewhere, and the habeas court found her statements "unworthy of belief." *Id.* In addition, sentencing counsel testified at the sentencing that she had contacted the attorney with whom the petitioner claimed to have been but he could not remember whether the petitioner was with him that day or, if so, what time she would have arrived at court. *See* Trial Tr. Dec. 7, 2007 at 3, Resp't's Mem. App. K 12/7/07.[2]

Regarding other instances of insufficient preparation and investigation, the habeas court found that the allegations, even if true, had no effect on the results of the trial because of the

---

[2] The evidence the petitioner points to in her reply brief does not support her claim of an alibi. It consists of testimony by a lawyer who represented her at her sentencing that that lawyer learned from another lawyer (who was representing the petitioner in probate court) that the petitioner was present in court with him on January 20, 2005. The sentencing lawyer admitted, however, that the probate lawyer "didn't know" if the petitioner was with him at the relevant time, and the petitioner did not call the probate lawyer as a witness at the habeas trial. Resp't's Mem. App. L at 166-69.

13

overwhelming evidence against the petitioner. The habeas court noted that, although the petitioner claimed that trial counsel should have investigated the claim that the petitioner's cousin might have been mistaken for her, the petitioner presented no evidence regarding her cousin's appearance and did not call her cousin as a witness. Further, the habeas court noted that there was no evidence presented at either trial linking the petitioner's cousin to the crimes. *Id.* at *2. The habeas court also rejected the petitioner's argument that trial counsel should have better investigated the intricacies of the credit card transactions as "of miniscule significance when contrasted to the weight of the evidence implicating the petitioner." *Id.*

> The habeas court provided a brief summary of the evidence against the petitioner.
>
> At the time of the crimes in question, the petitioner lived with her parents at 183 Wild Rose Drive in Orange, Connecticut. John Hillgen lived at 133 Wild Rose Drive and kept receiving deliveries of packages by FedEx and UPS which were not ordered by him nor did he recognize the names of the putative addressees. The street is a cul-de-sac where house number 183 is at the closed end and 133 is near the connecting end of the cul-de-sac.
>
> Hillgen refused to accept these packages and contacted the sender or delivery service concerning these errors. Hillgen did observe that the phone numbers associated with the items bore the correct phone exchange sequence for the town of Orange. Fedex representatives suggested that his address was being used as a "dropsite" for merchandise obtained illegally. Eventually, Hillgen discussed this problem with the Orange police department.
>
> Neiman Marcus is the parent company of Bergdorf Goodman, a store which specializes in luxury merchandise. In January 2005, a Bergdorf Goodman sales person answered a phone call from a female who identified herself as Debra Boies. The caller wished to purchase a $34,000 necklace and other jewelry worth around another $9,000 using her Neiman Marcus credit card. The customer provided a delivery address of 133 Wild Rose Drive in Orange.
>
> However, the credit card number supplied by the caller pertained to a cardholder whose address was listed as Bedford, New York. This discrepancy triggered the credit card company's fraud detection alert system. The company contacted the lawful owner of the card, Jonathan Boies, and he reported that the transaction was an unauthorized one. Boies and his wife physically had possession of the credit

14

card, so it was the credit card number which had been misused rather than the plastic card itself.

This attempted purchase led investigators for Neiman Marcus to search the records for other unauthorized transactions using that credit card number. The investigation revealed another illegal use of the credit card in January 2005 which employed the same dropsite and involved the acquisition of $2,252 worth of goods. The fraud unit contacted the United States Postal Inspector's office which set up a "controlled delivery."

The bait was labeled in the same fashion as a genuine delivery of Bergdorf Goodman's merchandise. The postal inspector coordinated with the Orange police department to surveil and video record the delivery of the two decoy parcels. The inspector was also wired for audio transmission, but that system failed because the distance was too great.

On February 1, 2005, at around 11:15 a.m., the postal inspector drove a mail truck into the driveway of 183 Wild Rose Drive, exited the vehicle with the parcels, and approached the front door. The petitioner, who was in pajamas, motioned the inspector to a side door adjacent to a small porch. The packages were addressed to Debra Boies and had Bergdorf Goodman labels on them. The inspector asked if the petitioner was Debra Boies, and the petitioner replied affirmatively.

The inspector informed the petitioner that he required two signatures for each of the two packages. The petitioner signed the name "Debra Boies" all four times. The phone number which the ersatz purchaser used when placing the order was the petitioner's phone number. The petitioner took the parcels and set them on a table. The inspector then left.

He signaled the police team that the delivery occurred, and the team apprehended the petitioner. The petitioner asked if she could retrieve her shoes, and the officers obliged. When escorting her to her shoes, the videographer spotted and recorded a piece of paper on a desk which contained the names Erica Sherwin and Kate's Paperie. The police advised the petitioner of her constitutional rights, and she signed an advisement form. She stated that the packages on the table were hers.

The petitioner requested to speak with her father who is an attorney. After speaking with her father, she agreed to discuss the credit card transactions. Her father was present during this conversation. She related that she received a telephone call from someone inquiring if she was the cardholder. The caller recited the credit card number which the petitioner wrote down. She later used the number to purchase around $42,000 worth of jewelry from Bergdorf Goodman. She denied any other similar misconduct.

> However, the police received other complaints of illegal credit card usage in which the lawful card holder was Pamela Williams. Again, the telephone number given was within the town of Orange exchange. The police called that number, and the petitioner answered the call. The telephone number was assigned to the petitioner's father, and the telephone was located in his home office. Eventually it was uncovered that that same number had been used in several other fraudulent credit card purchases under the cards belonging to Boies and Williams. The address of 183 Wild Rose Drive was also given by the caller.
>
> In addition to this evidence, the state also presented the testimony of a Fedex courier who, on January 20, 2005, had attempted delivery of a package addressed to 133 Wild Rose Drive, but no one responded. Because the package required confirmation of delivery with a signature, the courier left a door tag for the addressee.
>
> Before he departed, however, a woman came out of another house on the street and asked if the courier had a package for her. She suggested that the parcel was mislabeled as 133 instead of the correct number, 183. She signed for the delivery using the name "S. Bosis." Although this witness failed to pick out the petitioner's photograph out of an array, he positively identified her later as the same person to whom he gave the parcel on January 20, 2005.
>
> Kate's Paperie is located in Greenwich. Beth Boies and William were customers at that shop when the petitioner worked there. When a customer of that store paid by credit card, two receipts were generated. One was given to the customer, and the other retained by the store under a cash drawer in the cash register. This copy contained the customer's full credit card number, and this material was readily accessible to employees.

*Id.* at *3-4.

Regarding this claim, the habeas court found the petitioner's testimony not credible. It was not supported by any evidence and, actually, was contradicted by other evidence recited above. *Id.* at *5. The Court concludes that the habeas court's decision, rejecting the petitioner's version of events and concluding that trial counsel had rendered constitutionally adequate assistance through her pretrial investigation, was a reasonable application of Supreme Court holdings to the facts presented.

C. Trial Counsel Failed to Adequately Cross-Examine Witnesses

The petitioner contends that trial counsel failed to adequately cross-examine two of the state's witnesses, the FedEx courier and Detective Cole of the Orange Police Department. The habeas court noted that the petitioner presented no evidence regarding what trial counsel failed to elicit during cross-examination of these witnesses. Neither witness testified at the habeas hearing, and the petitioner did not question trial counsel regarding this claim. *Id.* at *2. Absent any evidence that trial counsel's performance was deficient or that the outcome of the trial would have been different, the habeas court's determination that trial counsel was not ineffective is a reasonable application of Supreme Court law. *See Lavayen v. Duncan*, 311 F. App'x 468, 471 (2d Cir.), *cert. denied sub nom. Lavayen v. Rock*, 558 U.S. 935 (2009) ("The decision 'whether to engage in cross-examination, and if so to what extent and in what manner' is generally viewed as a strategic decision left to the sound discretion of trial counsel.").

D. Trial Counsel Failed to Make Adequate Summation

The petitioner's final challenge to trial counsel's representation concerns closing argument. The petitioner contends that trial counsel stated three times that there was no reasonable doubt in referencing the state's case. When questioned about this at the habeas trial, counsel stated that she misspoke and intended to say that the state failed to present proof beyond a reasonable doubt. Habeas Tr. at 122-23. A review of the trial transcript shows that the three comments were made while trial counsel was identifying deficiencies in the state's case. Trial Tr. Oct. 5, 2007 at 44-46.

In reviewing this claim, the habeas court acknowledged that the statements were made while counsel was criticizing the state's case and, thus, were obviously misstatements. In

17

addition, the habeas court noted that the prosecutor interpreted the statements that way and characterized her summation as "trying to say reasonable doubt [exists]." *Bozelko*, 2013 WL 4734867, at *6. The trial court instructed the jury on the presumption of innocence, the requirement that the state prove guilt beyond a reasonable doubt and the meaning of reasonable doubt. Trial Tr. Oct. 5, 2007 at 57-58, 62-64. The petitioner was convicted on only some of the charges against her, suggesting that the jury understood the requirement that the prosecution must prove guilt beyond a reasonable doubt. In light of the evidence presented, this Court concludes that the habeas court's decision was a reasonable application of Supreme Court law.

      E.      <u>Sentencing Counsel Was Unprepared</u>

Finally, the petitioner contends that sentencing counsel was unprepared and, thus, provided ineffective assistance. The state court granted trial counsel's motion to withdraw on November 19, 2007. The petitioner filed a *pro se* appearance in all of her criminal cases. At the hearing, the state court informed the petitioner that whether she retained new counsel or not, her sentencing would proceed on December 7, 2007. No continuances would be granted. Trial Tr. Nov. 19, 2007 at 7-8. Although she had met with the petitioner and her family before being retained, sentencing counsel appeared only three days before the sentencing. Habeas Tr. at 168-69. Sentencing counsel requested a short continuance to better prepare for sentencing, but the court denied the request. *Id.* at 170.

Because the petitioner was warned by the trial court that the sentencing would proceed on December 7, 2007, and did not retain sentencing counsel until shortly before the sentencing, and because her family did not retain the defense mitigation specialist recommended by counsel before sentencing, the habeas court concluded that sentencing counsel's failure to submit a

sentencing memorandum was not attributable to her. *Bozelko*, 2013 WL 4734867, at *6.

Regarding counsel's representation at sentencing, the habeas court concluded that, despite counsel's statement that she was unprepared, sentencing counsel "performed admirably." *Id.* at *7. In advance of the sentencing, counsel interviewed the petitioner and her family members, reviewed the trial transcripts and documentary evidence, discussed the case with former counsel, reviewed the petitioner's academic records, and reviewed the petitioner's medical records weighing 4.6 pounds. *Id.*

Again, the petitioner presented no evidence of anything that sentencing counsel failed to do at sentencing, other than submit a memorandum, and did not demonstrate any prejudice from the representation provided. This Court concludes that the habeas court's decision that sentencing counsel was not ineffective was a reasonable application of Supreme Court law.

F. Unreasonable Determination of the Facts

In her reply brief, the petitioner argues that the state court decision was an unreasonable determination of the facts in light of the evidence presented. When reviewing this claim, the Court is limited to the record presented to the state courts. *See id.* at 184; *see also* 28 U.S.C. § 2254(d)(2) (restricting review to "evidence presented in the State court proceeding"). "Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.* at 186 (citation omitted). As explained above, the petitioner presented no evidence to the state court that would contradict any state court factual determination. None of the witnesses from the trial testified so the habeas court had no information to show that trial counsel's cross-examination was deficient. No expert testimony was presented to demonstrate

19

that trial counsel's performance was constitutionally inadequate or that, had counsel acted differently, the result would have been different. The petitioner does not acknowledge the deferential standard this Court must apply to the habeas court's factual determinations. Rather, she attempts to reargue facts from the trial in light of her lay opinion that counsel was ineffective. As no contradictory information related to the evidence against the petitioner was presented to the habeas court, and as the state habeas court, which had the opportunity to observe the petitioner's testimony, found her not to be credible, this Court finds that the state habeas court reasonably determined the facts in light of the evidence before it.

## V. Conclusion

The Court concludes that the petitioner has failed to establish that there is no reasonable argument that trial and sentencing counsel satisfied the *Strickland* standard. *See Harrington*, 562 U.S. at 105 (Section 2254 habeas relief on ineffective assistance of counsel grounds should be denied if "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard"). Accordingly, the petition for writ of habeas corpus [ECF No. 1] is **DENIED**. Any appeal of this order would not be taken in good faith. Thus, a certificate of appealability will not issue.

The Clerk is directed to enter judgment in favor of the respondent and close this case.

**SO ORDERED** this 30th day of May 2017, at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge